**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BERNARD J. FOLIO; MID-CITY LAND
COMPANY; BERNARD J. FOLIO, d/b/a
High Rise Associates, Incorporated;
GRANDEOTTO, INCORPORATED;
KATHRYN FOLIO; JOSEPH A. FOLIO,
<u>Plaintiffs-Appellants,</u>

v.                                                            No. 97-1628

THE CITY OF CLARKSBURG, WEST
VIRGINIA, a West Virginia municipal
corporation; FRANK FERRARI,
Director of Finance for the City of
Clarksburg,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
William M. Kidd, Senior District Judge.
(CA-96-180)

Argued: October 27, 1997

Decided: January 26, 1998

Before LUTTIG, Circuit Judge, CAMPBELL, Senior Circuit Judge
of the United States Court of Appeals for the First Circuit, sitting
by designation, and TRAXLER, United States District Judge for
the District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Luttig and Senior Judge Campbell joined.

_____

**COUNSEL**

**ARGUED:** Thomas G. Eddy, EDDY & OSTERMAN, Pittsburgh, Pennsylvania, for Appellants. Gregory Alden Morgan, YOUNG, MORGAN & CANN, Clarksburg, West Virginia, for Appellees. **ON BRIEF:** J. Cecil Jarvis, MCNEER, HIGHLAND & MCMUNN, Clarksburg, West Virginia, for Appellants.

_____

**OPINION**

TRAXLER, District Judge:

Appellants brought this action pursuant to 28 U.S.C.A. § 2201(a) (West 1994) and 42 U.S.C.A. § 1983 (West Supp. 1997) against the City of Clarksburg, West Virginia ("the City") and Frank Ferrari, Director of Finance for Clarksburg, seeking a judgment declaring unconstitutional an ordinance that imposes a fee for municipal services and an injunction against the future collection of the fee. Appellants challenge the ruling of the district court that the Tax Injunction Act precludes federal subject matter jurisdiction. See 28 U.S.C.A. § 1341 (West 1993). We affirm.

I.

West Virginia law bestows upon a municipality which furnishes essential municipal services such as police or fire protection "plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance." W. Va. Code § 8-13-13 (1990). Enabled by this statute, the City enacted an ordinance imposing fees upon property owners and occupiers within the City for fire protection services. See Clarksburg, W. Va. Ordinances part 9, ch. 5, §§ 957.01, 957.11 (1983) (as amended). The amount of the fee is tethered to the classification of each property owner as "residential" or "non residential," requiring residential owners to pay a flat fee and non-residential owners to pay a fee determined by refer-

2

ence to the square footage of their property. See id. at § 957.11(a).**1** Appellants own real property within the City's corporate boundaries and are classified as nonresidential property owners. See id. at § 957.02(d).

In 1993 and 1994, the City commenced several actions against appellants, which were later consolidated into a single lawsuit in the Circuit Court of Harrison County, West Virginia, to collect unpaid fire protection service fees previously assessed against appellants. The parties filed cross-motions for summary judgment. Appellants argued to the state tribunal that the imposition of the fees constituted equal protection and due process violations under both the state and federal constitutions. The state court acknowledged appellants' assertion that the fire protection service fee "violates the Due Process and Equal Protection Clauses of the United States ... Constitution[ ]," see City of Clarksburg v. Grandeotto, Inc., et al., Circuit Court, Harrison County, West Virginia, No. 93-C-609-2 at 10 (July 24, 1997) ("Memorandum of Decision"), but granted summary judgment in favor of the City and ordered appellants to pay their outstanding fire protection service fees. The West Virginia court expressly determined that appellants "failed to meet their burden of proving that the classifications selected by the City are arbitrary and unreasonable" or that "they were treated differently from other property owners in their same classifications." Id. at 13.

While the state court action was pending, appellants initiated this action in federal district court against the City. Appellants sought a declaratory judgment that the ordinance, as it relates to fire protection services, violates the due process and equal protection clauses of the Fourteenth Amendment, and requested injunctive relief against the City to prevent future collection or assessment of the fees. Concluding that the Tax Injunction Act barred it "from enjoining, suspending or restraining the assessment, levy or collection of the [o]rdinance" or "issu[ing] a declaratory judgment holding the [o]rdinance unconstitutional," the district court granted the City's motion to dismiss for lack

_____

**1** An exception to this assessment scheme is made for owners of multiple family residential units who, like nonresidential property owners, must pay based upon square footage. See Clarksburg, W. Va. Ordinances part 9, ch. 5 at § 957.11(a).

3

of subject matter jurisdiction. J.A. 24. Appellants urged the district court to find the Tax Injunction Act inapplicable because West Virginia state law provides no adequate or certain remedy to challenge the ordinance. The district court rejected this argument and noted that the only uncertainty was whether appellants would prevail on the merits of their claim in state court. See id. at 23. Additionally, the district court found, contrary to appellants' insistence, that the fire service protection fee is a tax subject to the Tax Injunction Act because the ordinance raised revenue for the public benefit and was not "in the nature of a privilege fee." See id. (internal quotation marks omitted).

II.

The Tax Injunction Act provides in its totality that"[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C.A. § 1341. This statutory provision is a jurisdictional bar that is not subject to waiver, and the federal courts are duty-bound to investigate the application of the Tax Injunction Act regardless of whether the parties raise it as an issue. See Collins Holding Corp. v. Jasper County, South Carolina, 123 F.3d 797, 799 & n.1 (4th Cir. 1997). The Tax Injunction Act is undergirded by a policy of restraint in the federal courts, which, save limited exceptions, are "under an equitable duty to refrain from interfering with a State's collection of its revenue" in light of "the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976). Essentially, "the Act ... [is] first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981). It is settled that the broad prophylactic terms of the Tax Injunction Act apply to declaratory as well as injunctive relief, see California v. Grace Brethren Church, 457 U.S. 393, 411 (1982), and that local taxes fall within the ambit of the statute, see Collins Holding Corp., 123 F.3d at 799 n.2. Moreover, the Tax Injunction Act applies to actions where, as here, a taxpayer seeks injunctive or declaratory relief under § 1983. See Rosewell, 450 U.S. 503. Only when state law provides no "plain, speedy and efficient" remedy may a federal district court order declaratory or injunctive relief that trenches upon "the assessment, levy or collection" of any state or

4

local tax. See Grace Brethren Church, 457 U.S. at 411; see also Strescon Indus., Inc. v. Cohen, 664 F.2d 929, 931 (4th Cir. 1981) (explaining that "[t]he only exception contemplated by Congress relates to State remedies which are not plain, speedy, or efficient").

Mindful of these principles, we turn to address appellants' contention that the district court erroneously dismissed their action for lack of subject matter jurisdiction, applying a de novo standard of review. See Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1034 (4th Cir. 1994). Appellants advance a two-fold argument. First, they maintain that the "plain, speedy and efficient" exception applies here, allowing the district court to exercise jurisdiction over their action for declaratory and injunctive relief against the City. Second, they contend that the district court was not prohibited from entertaining their suit because the City's ordinance does not impose a "tax" within the meaning of the Tax Injunction Act. For the reasons set forth below, we find both contentions meritless.

A.

"On its face, the `plain, speedy and efficient remedy' exception appears to require a state-court remedy that meets certain minimal procedural criteria." Rosewell, 450 U.S. at 512 (emphasis in original). The essential question is whether the state remedy "provides the taxpayer with a `full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." Id. at 514. Stated differently, the taxpayer is entitled to a meaningful opportunity to assert federal constitutional challenges to the tax in state court. See McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 39 (1990). Thus, a real or perceived defect in the substantive remedy afforded a taxpayer under state law does not clothe the district court with jurisdiction to hear appellants' claims. See Strescon Industries, 664 F.2d at 931 (observing that where "otherwise adequate [s]tate procedures" exist, "an asserted substantive defect in the [s]tate remedy, even if found to exist, is an insufficient basis upon which [f]ederal jurisdiction may be grounded").

In addition to meeting minimal procedural safeguards, the state remedy must be certain -- state remedies that are merely speculative will not divest the federal courts of jurisdiction to entertain a state tax-

5

payer's claim. See Franchise Tax Bd. v. Alcan Aluminum, Ltd., 493 U.S. 331, 340 (1990); Hillsborough v. Cromwell , 326 U.S. 620, 625-26 (1946). However, the "certainty" that is required is procedural in nature; the Tax Injunction Act does not guarantee that the substantive relief sought by the taxpayer be certain or even likely. See Rosewell, 450 U.S. at 512-15; see also Cities Serv. Gas Co. v. Oklahoma Tax Comm'n, 656 F.2d 584, 586-87 (10th Cir. 1981) (explaining that "the likelihood of plaintiff's success in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of § 1341 applies"). In examining whether state law provides a full opportunity for the presentation of federal challenges, courts must "be faithful to the congressional intent `to limit drastically' federal-court interference with state tax systems, [and] construe narrowly the `plain, speedy and efficient' exception to the Tax Injunction Act." Grace Brethren Church, 457 U.S. at 413.

Appellants argue that West Virginia law does not afford them a meaningful opportunity to raise their federal constitutional challenges to the City's ordinance in a state forum, asserting that every potential avenue of relief under state law is so tenuous and speculative that they do not have a plain, speedy and efficient remedy. We are not persuaded. Appellants have already raised numerous federal constitutional issues in defending against the City's state collection action which was pending at the time appellants initiated this action in federal court. They do not contend that they were precluded from pursuing these arguments in state court. In fact, just the opposite is true. Appellants admit that their "federal constitutional rights were indeed asserted" before the state tribunal. Brief of Appellants at 4. Rather, appellants insist that the West Virginia circuit court ignored these federal issues when it granted summary judgment to the City -- an assertion that is simply not sustained by the record. In its written order disposing of the cross-motions for summary judgment, the state court acknowledged appellants' federal constitutional arguments:

> Defendants have responded [to the City's lawsuits] by arguing that the fire protection service fee ordinance is invalid and unenforceable because it was not enacted in accordance with state law, it violates the Tax Limitation Amendment of the West Virginia Constitution, W. Va. Const. art. I, § 10, and it violates the Due Process and Equal Protection Clauses

6

of the United States and West Virginia Constitutions because it is unreasonable.

See Memorandum of Decision at 10. The state court then granted summary judgment in favor of the City and ordered appellants to pay their outstanding fire protection service fees. In so doing, the court concluded that appellants "failed to meet their burden of proving that the classifications selected by the City are arbitrary and unreasonable" or that "they were treated differently from other property owners in their same classifications." Id. at 13. It is clear, contrary to what appellants would have us believe, that the West Virginia state court considered appellants' federal claims but simply rejected them. That being the case, the essence of appellants' argument is substantive, i.e., that they are entitled to a favorable disposition on the merits by the state court. Unfortunately for appellants, the "plain, speedy and efficient" requirement of the Tax Injunction Act does not guarantee appellants success in state court on the substantive merits of a claim. See Rosewell, 450 U.S. at 512-15.

Moreover, even had the City not initiated an action against appellants in state court, West Virginia's version of the Uniform Declaratory Judgment Act provides appellants with a "plain, speedy and efficient" remedy that would preclude federal jurisdiction here. See W. Va. Code § 55-13-1 (1990). This statute explicitly contemplates that parties who are aggrieved by a municipal ordinance may seek a declaratory judgment: "Any person ... whose rights, status or other legal relations are affected by a statute, [or] municipal ordinance ... may have determined any question of construction or validity arising under the ... statute, [or] ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." W. Va. Code § 55-13-2. Under West Virginia law, a declaratory judgment action is clearly an appropriate vehicle for challenging the constitutionality of a municipal ordinance, see, e.g., Kisner v. City of Fairmont, 272 S.E.2d 673, 675 (W. Va. 1980); Farley v. Graney , 119 S.E.2d 833, 839 (W. Va. 1960), and there is no procedural reason why this approach could not be employed to challenge the ordinance at issue here. Indeed, we are certainly not alone in concluding that the availability of declaratory relief under state law constitutes a "plain, speedy and efficient" remedy for purposes of the Tax Injunction Act and bars federal jurisdiction. See Tully, 429 U.S. at 74-75; see also

7

Burris v. City of Little Rock, 941 F.2d 717, 720-21 (8th Cir. 1991) (concluding that an Arkansas declaratory judgment statute affords an adequate remedy under 28 U.S.C. § 1341); Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 431-32 (2d Cir. 1989) (finding that declaratory relief under New York law satisfied the requirements of 28 U.S.C. § 1341 and barred federal jurisdiction).

Appellants, however, assert that declaratory relief under West Virginia law is not an adequate state remedy because a state judge has some discretion in exercising jurisdiction over a declaratory judgment action. See Hall v. Hartley, 119 S.E.2d 759 (W. Va. 1961). Further, the argument goes, in light of unfavorable West Virginia precedent, no state court will opt to entertain such an action, rendering a declaratory judgment action an illusory remedy. Specifically, appellants rely upon City of Huntington v. Bacon, 473 S.E.2d 743 (W. Va. 1996), which held in part that a municipal fire protection fee -- substantially similar to the one at issue here -- was a fee as opposed to a "tax" under West Virginia law, and had been properly enacted by the City of Huntington, see id. at 753-54, 758. Appellants suggest that Bacon forecloses the possibility that a state court would visit the issue of whether the City's fee structure is constitutional, and that any attempt to obtain declaratory relief would be futile.

Appellants may be correct that, in light of Bacon or other West Virginia case law, they would meet with little success were they to seek a declaration in West Virginia state court that the ordinance runs afoul of the federal constitution. But, again, the Tax Injunction Act only guards against procedural defects, not substantive defects, see Strescon Indus., 664 F.2d at 931, and it does not allow appellants to invoke the jurisdiction of the federal courts merely because state precedent is unfriendly, see Carrier Corp. v. Perez , 677 F.2d 162, 166 (1st Cir. 1982). We conclude that the Uniform Declaratory Judgment Act, as adopted by West Virginia, see W. Va. Code § 55-13-2, is a "plain, speedy and efficient" remedy within the meaning of 28 U.S.C.A. § 1341.**2**

_____

**2** In light of our determination that West Virginia affords appellants a sufficient opportunity to raise their federal challenges to the ordinance via a declaratory judgment action or in defense to an action to collect the

8

B.

Having concluded that appellants have a "plain, speedy and efficient" remedy under West Virginia law, we consider whether the fire protection service fee constitutes a tax for purposes of the Tax Injunction Act. We conclude that it does.

Appellants contend that the phrase "tax under[s]tate law," see 28 U.S.C.A. § 1341, requires this court to look to state law to determine whether the assessment at issue is a tax within the meaning of the Tax Injunction Act, arguing that "the label given the assessment by the highest court of a state is dispositive of whether the assessment is [a tax] for purposes of the Act." Brief of Appellants at 21. Because the Bacon court concluded that a similar ordinance imposes a "fee" under West Virginia law, see Bacon, 473 S.E.2d at 751-54, appellants claim that the ordinance before us is not a "tax under state law" and falls outside of the Tax Injunction Act.

We cannot agree. For purposes of the Tax Injunction Act, it is this court that decides whether the state or local law is a tax, guided by "federal law ... rather than ... state tax labels." Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 374 (3d Cir. 1978); see Collins Holding Corp., 123 F.3d at 800 n.3 (noting that "[w]hether the body imposing the assessment labels it as a tax or a fee is not dispositive because the label is not always consistent with the true character of the assessment").

Thus, we look to federal law which "make[s] a general distinction between broader-based taxes that sustain the essential flow of revenue to state (or local) government and fees that are connected to some regulatory scheme." Collins Holding Corp., 123 F.3d at 800. A tax is

_____

fees, we need not decide whether the protest procedure that is set forth in the ordinance, see Clarksburg, W. Va. Ordinances at § 957.16, is a "plain, speedy and efficient" remedy in and of itself, cf. Tully, 429 U.S. at 74-77 (holding that New York declaratory judgment procedure provided adequate recourse to challenge the constitutionality of a state tax statute even though the statute contained an "exclusive" remedy provision).

generally a revenue-raising measure, imposed by a legislative body, that allocates revenue "to a general fund, and[is] spent for the benefit of the entire community." Id. (quoting San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683, 685 (1st Cir. 1992)). A user fee, by contrast, is a "payment[ ] given in return for a government-provided benefit" and is tied in some fashion to the payor's use of the service. United States v. City of Huntington, 999 F.2d 71, 74 (4th Cir. 1993). Generally speaking, a special assessment imposed by a municipality qualifies as a tax within the meaning of the Tax Injunction Act. See, e.g., Burris, 941 F.2d at 720; Indiana Waste Sys., Inc. v. County of Porter, 787 F. Supp. 859, 865 (N.D. Ind. 1992) (collecting cases).

This court has previously considered an essentially indistinguishable West Virginia municipal ordinance imposing fire service protection fees, and there we concluded that it constituted a tax within the meaning of the Tax Injunction Act because liability for the fee was based upon a resident's property owner status instead of his use of the city service. See City of Huntington, 999 F.2d at 73-74. We are not able to distinguish the fire service protection fee at issue here from the one the court studied in City of Huntington , and, as did that court, we conclude that the fee is a tax for purposes of the Tax Injunction Act.

III.

Finally, Appellants contend that the principles of judicial estoppel prohibit the City from arguing in state court that the assessment here is a fee, while taking the contradictory position in federal court that it is a tax.**3** Judicial estoppel is an equitable doctrine that exists to pre-

_____

**3** We note ironically that appellants maintained inconsistent positions in federal and state court, essentially making the reverse arguments of the City. In the state proceeding, appellants argued that the fire protection service fee was a tax imposed in violation of Article X of the West Virginia Constitution. J.A. 20F, 20J. Furthermore, in appellants' complaint in this action, they assert that "[t]he fire service fees assessed pursuant to the [o]rdinance are in reality taxes ... and are being imposed ... under the guise and label of `fees.'" (J.A. at 8). By contrast, they contend on appeal that the ordinance imposes a fee which is not subject to the Tax Injunction Act. Thus, appellants ask us to prohibit the City from doing precisely what they do so freely. We decline.

10

vent litigants from playing "fast and loose" with the courts -- to deter improper manipulation of the judiciary. John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995). In order for judicial estoppel to apply, (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. See Lowery v. Stovall , 92 F.3d 219, 224 (4th Cir. 1996), cert. denied, 117 S. Ct. 954 (1997).

The City is not advancing before us a factual position that is inconsistent with any position that it took during the state court proceedings. Rather, the City is simply urging us to conclude that the ordinance amounts to a tax under federal law, while suggesting in state court that state law produces a different result. The City has not changed the facts from one forum to the next; it is simply applying a different body of law. In our view, the City is merely presenting inconsistent legal theories, a practice that is not proscribed by judicial estoppel. See Lowery, 92 F.3d at 224; Tenneco Chemicals, Inc. v. William T. Burnett & Co., 691 F.2d 658, 664-65 (4th Cir. 1982). Furthermore, given the contrary results reached by this court in City of Huntington and the Supreme Court of Appeals of West Virginia in Bacon on the nature of an essentially identical ordinance, we do not find it at all dishonest of the City to argue to us that the assessment here is a tax under federal law, while maintaining in state court that it is not. Accordingly, we conclude that the application of judicial estoppel is not appropriate in these circumstances.

IV.

For the foregoing reasons, we affirm the dismissal of this action by the district court for lack of subject matter jurisdiction.

AFFIRMED