**RTC MORTGAGE TRUST 1995–S/N2, Plaintiff,**

v.

**John F. McMAHON, Jr., et al., Defendant.**

**CIV. A. No. 96–1776–A.**

United States District Court, E.D. Virginia, Alexandria Division.

April 21, 1997.

Mary Catherine Zinsner, Mays & Valentine, McLean, VA, for Plaintiff.

Paul Dennis Scanlon, Manassas, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This case comes before the Court on Plaintiff RTC Mortgage Trust 1995–S/N2's ("RTC Mortgage") Motion for Summary Judgment and Defendant Gary Pugh, Trustee's Motions to Dismiss and to add the trustee as a party plaintiff.

### I.

This case is another step in a long dance between these parties. It focuses on a parcel of real property located in Manassas, Virginia, the Manassas Office Research Park ("Research Park"). The Research Park had been owned by Defendant John F. McMahon, Jr., ("McMahon"), and in 1987, McMahon had executed a Deed of Trust to secure a Note in the original principal amount of $3,170,000 ("Note"). The Resolution Trust Corporation ("RTC") became receiver of the original lender, Baltimore Federal Financial, in April, 1990. After the RTC took over the original lender, it became the owner of the Note, Deed of Trust and other documents ("Loan Documents") involved in this case.

On January 31, 1992, McMahon and his wife filed for Chapter 11 bankruptcy. Under a Consent Order, the Bankruptcy Court permitted McMahon to use the rents from Research Park, subject to a "first priority lien" held by RTC. This priority lien was reiterated in the Consolidated Plan subsequently filed by McMahon on April 30, 1993, as well as in Exhibit C to the Disclosure Statement filed with the Plan, and in the Amended Consolidated Plan and in the Amended Disclosure Statement. The Bankruptcy Court refused to confirm either the Consolidated Plan or the Amended Consolidated Plan, but it did confirm the Amended Disclosure Statement and appoint a trustee. The trustee subsequently filed a Second Amended Plan, which noted the Deed of Trust on the Research Park, and provided that the trustee could market the property. After McMahon did not object, the Bankruptcy Court confirmed the Second Amended Plan by a Confirmation Order which expressly affirmed the validity of the Loan Documents and the first priority lien on Research Park.

Unfortunately, the trustee was unable to sell Research Park, and he abandoned any interest in the property by notice filed August 20, 1996. RTC Mortgage became owner of the Loan Documents by assignment on or about August 31, 1995. During his bankruptcy proceedings, McMahon apparently conveyed Research Park to Defendant Gary A. Pugh, Trustee, as well as his beneficial interest to Defendant M3, L.L.C.

After entry of a Bankruptcy Court Order abandoning Research Park, RTC Mortgage filed a Motion for Relief to pursue its remedies under the Loan Documents, and the Court granted that Motion and entered an Order on November 15, 1996, without any objection from McMahon. RTC Mortgage subsequently filed this suit seeking (1) appointment of a Receiver for Research Park (which was granted by a December 20, 1996 Order of this Court); (2) an injunction prohibiting the Defendants from interfering with Plaintiff's rights under the mortgage documents; and (3) a declaration that the Loan Documents remain valid and create an enforceable priority lien against Research Park.

## II.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Randall v. U.S.,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Accordingly, such motions "should be granted only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). When considering a motion to dismiss, the plaintiff's allegations must be taken as true. *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989). Thus, a motion to dismiss under Rule 12(b)(6) should be denied " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *De Sole v. U.S.,* 947 F.2d 1169, 1177 (4th Cir.1991) (quotation omitted).

■ A motion to dismiss under Rule 12(b)(6) must also be assessed in light of Rule 8(a)'s liberal pleading standards. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need only to state sufficient facts to enable the defendant to draft a responsive pleading. 5A Wright & Miller, *Fed Practice and Procedure,* § 1357. According to this formulation, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to *infer* that all of the required elements of the cause of action are present. *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972) (citation omitted).

Summary judgment is appropriate only if " 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). "A district court must grant summary judgment if, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case ." *Baber v. Hospital Corp. of Am.,* 977 F.2d 872, 874 (4th Cir.1992) (citation omitted). However, a court may only grant a summary judgment motion "if the non-movant failed to make a sufficient showing on an element on which he had the ultimate burden of proof." *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1259 (4th Cir.1991) (citation omitted).

"The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for th[at] [party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In reviewing the evidence submitted by the parties, "the court must draw any inferences in the light most favorable to the non-movant." *Brock,* 933 F.2d at 1259 (citation omitted). The court must ultimately "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Id.* (citation omitted).

## III.

■ Defendant Pugh filed a Motion to Dismiss based on his argument that the

trustee of the deed of trust is a necessary party plaintiff, and that adding the Trustee destroys diversity jurisdiction. The Loan Documents clearly authorize RTC Mortgage to seek a receiver and enforce those documents; this Court already appointed a receiver in its Order of December 20, 1996. Though it will be more fully analyzed under the Motion for Summary Judgment, the Defendant fails to cite to precedent which supports its position. Just because the trustee of the deed of trust could enforce something does not mean that it is a necessary party in these proceedings; RTC Mortgage possesses an independent right to pursue its rights under the Loan Documents. In addition, this case does not involve a title dispute. Instead, RTC Mortgage only seeks to have the Loan Documents ruled valid and enforceable. Accordingly, the Motion to Dismiss is DENIED, and the Motion to add the Trustee as a party plaintiff is DENIED.

### IV.

The Plaintiff moves for Summary Judgment based on the separate grounds of res judicata, collateral estoppel, equitable estoppel, and judicial estoppel.

■ Res judicata can encompass both issue preclusion, commonly referred to as collateral estoppel, as well as claim preclusion. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1314–15 (4th Cir.1996). The latter requires "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir.) (citation omitted), *cert. denied*, 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Issue preclusion, or collateral estoppel, is a narrower concept. *Varat Enters.*, 81 F.3d at 1315 (citation omitted). It precludes a party from relitigating ultimate issues of fact that have already been "actually and necessarily determined by a court of competent jurisdiction" against that party. *Id.*

■ The facts of this case satisfy both forms of res judicata. The Defendants had numerous opportunities to challenge the validity of the Loan Documents and the lien during the Bankruptcy, and failed to do so. The Bankruptcy Court, in at least two separate orders, affirmed the validity of each. Accordingly, the Defendants are precluded in this case from denying that.

.

### V.

■ The doctrine of judicial estoppel, though closely related to collateral and equitable estoppel, is "dissimilar in critical respects." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982). Judicial estoppel prevents a party from adopting a position inconsistent with a position taken by the party in prior litigation. *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir.1995) (citation omitted). While no general formulation precisely captures when judicial estoppel applies, *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir.1996), the doctrine serves to stop a party "from playing 'fast and loose' with the courts." *Clark*, 65 F.3d at 29 (quoting *Allen*, 667 F.2d at 1162). The doctrine should be applied cautiously, and should not be invoked if the party based its prior position on "inadvertence or mistake." *Id.* (citations omitted). Judicial estoppel requires "an intent to mislead." *Clark*, 65 F.3d at 29 (citation omitted). The party asserting judicial estoppel should show that the other party took a contrary position under oath in a prior proceeding which the prior court accepted. *Lowery*, 92 F.3d at 224. "The vice which judicial estoppel prevents is the cold manipulation of the courts to the detriment of the public interest." *Clark*, 65 F.3d at 29.

■ McMahon insisted to the Bankruptcy Court and his creditors that the Loan Documents were a valid debt owed by him. That position permitted him to some degree of relief. Having obtained that benefit, he now seeks to have those same Loan Documents invalidated. The public interest would be severely undermined if this Court permitted McMahon to make representations to the Bankruptcy Court (which served as the basis for the Second Amended Plan), and then emerge from bankruptcy without the Order imposed of effect. McMahon had a duty to disclose to the bankruptcy court all of the

assets to which creditors could post a claim, and "the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362 (3d Cir.1996) (citation omitted).

■ Furthermore, once the Second Amended Plan was confirmed, McMahon could not assert rights inconsistent with that plan. *Varat Enters.,* 81 F.3d at 1317 (citation omitted). This Court believes that in addition to being prevented from asserting inconsistent rights, McMahon cannot assert defenses which are inconsistent with the position taken in the Bankruptcy Court and confirmed in the Second Amended Plan.

### VI.

■ Whereas judicial estoppel focuses on the relationship between the court and a party, equitable estoppel concerns the rights between the parties. Equitable estoppel resembles fraud in that it requires a showing that the offending party induced another to detrimentally rely on some form of conduct. *In re Royal Meadows Stables, Inc.,* 187 B.R. 516, 518 (Bkrtcy.E.D.Va.1995). In such circumstances, the offending party will be precluded from asserting facts inconsistent with those upon which the other side relied. *Id.;* see also *Varat Enters.,* 81 F.3d at 1317 (outlining four required elements). Importantly, in order to establish equitable estoppel, the party asserting estoppel must have been without knowledge of the truth. *In re Britt,* 156 B.R. 511, 517 (Bkrtcy.E.D.Va.1993).

■ Viewing the facts in a light most favorable to McMahon, the Court cannot conclude as a matter of law that equitable estoppel applies in this case. RTC Mortgage knew all of the necessary facts throughout these proceedings.

On the other hand, this Court finds that Plaintiff is entitled to summary judgment on both forms of res judicata, issue and claim preclusion, as well as on the independent ground of judicial estoppel. The facts of this case satisfy each element of each of those doctrines.

### VII.

The Defendants, in their Opposition, do not expressly dispute the Plaintiff's assertions of res judicata and judicial estoppel. Instead, as its initial response, the Opposition states that summary judgment cannot be granted because (1) the law requires that the original promissory note be attached; (2) that a promissory note cannot be taken as confessed; and (3) an attorney in fact can not act for a trustee. No precedent, however, is cited in support of any of these assertions, and the Court does not know of any such support.

■ The Opposition contends that Gary Pugh, Trustee is the only true owner of Research Park, and that McMahon has had no part or interest in the property since 1994. This is completely at odds with the undisputed facts and prior procedural history of this case. McMahon executed the Loan Documents in his personal capacity and as trustee, and he held both legal and beneficial interests in Research Park which were part of the bankruptcy. He also was properly named as a defendant by RTC Mortgage in its Motion for Relief from the Bankruptcy Stay to enforce its rights under the Loan Documents, and the subsequent Order applied to him.

■ The Opposition also contains the assertion, in Paragraphs 2, 7 and 9, that the Deed of Trust is void under the Virginia Code. Before the Bankruptcy Court, however, McMahon listed the property as an asset and on more than one occasion affirmed the validity of the Deed of Trust. Having argued the opposite to the Bankruptcy Court, the Defendants cannot not assert this to the Court. Again, this Court does not have a title dispute before it; RTC Mortgage only seeks to have the validity of the Loan Documents upheld.

■ The Defendants further argue that the abandonment by the trustee somehow relinquished McMahon's obligations under the Loan Documents. The Defendants cite no Virginia law for this proposition, and the provision from Collier's which is cited does not support the Defendants' argument. According to that provision, the abandonment

by the trustee effects an abandonment by the debtor. Such abandonment, though, does not alter the underlying Loan Documents, nor does it modify or cancel the Order of the Bankruptcy Court.

The Defendants argue that the Confirmed Bankruptcy Plan discharged McMahon of all his obligations. That is absolutely not what the Plan did; it specifically maintained the enforceability of the Research Park lien. The Defendants also seek to rely on a letter from RTC Counsel in 1991. That letter, however, by its own terms contains more questions than answers, and cannot support the proposition for which the Defendants forward it.

In sum, the Defendants' Opposition discusses many things but not the nub of this case, which is based on the prior proceedings in Bankruptcy Court. The doctrines of res judicata and judicial estoppel apply here, and the Loan Documents remain valid and create an enforceable lien on Research Park. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED as to Counts II and III of their Complaint.